# CIRCUIT COURT REPORTS.

## NEW SERIES—VOLUME IX.

CAUSES ARGUED AND DETERMINED IN THE CIRCUIT
COURTS OF OHIO.

### BONDS FOR CITY'S SHARE OF CONTEMPLATED IMPROVEMENTS.

[Circuit Court of Lucas County.]

THOMAS F. HEFFNER, A TAX-PAYER, ON BEHALF OF THE CITY OF TOLEDO, v. THE CITY OF TOLEDO ET AL.

Decided, October 19, 1906.

*Ordinance—Authorizing Bonds for City's Share of Various Improvements—Sewers and Street Intersections—Title of Ordinance Sufficiently Full, When—Procedure under Section 1536-281—Section 1694, Relating to Title of Ordinances or By-laws—Sections 1536-213, 284, and 287.*

1. An ordinance providing for an issue of seventy-five bonds of $1,000 each to meet the city's part of thirty-two sewer and street improvements, which are not more particularly named, is not violative of the requirement of Section 1694, Revised Statutes, because containing more than one subject not clearly expressed in the title; on the contrary, such an ordinance contains but one subject, and that is the subject embraced in Section 1536-213.

2. Moreover, it was not the legislative intent that there should be separate legislation providing for an issue of bonds to pay the city's share of each improvement made. A fund raised for such a pur-

1

pose is a general fund from which the city may draw from time to time as occasion arises to pay its share of such improvements, wherever they may be located within the boundaries of the city; and in providing for this fund, it is not necessary to wait until legislation with respect to a particular improvement has gone forward to the point where an assessment has actually been levied.

B. A. Hayes, for plaintiff: A city council can not, by passing a single ordinance, authorize the issue of bonds to raise funds to pay the city's part of thirty-two different improvements. *Elyria Gas & Water Co.* v. *Elyria,* 57 Ohio St., 374; *Campbell* v. *Cincinnati,* 49 Ohio St., 463; Revised Statutes, 2706, 2708.

The ordinance authorizing the issue of the bonds in question was prematurely passed. *Elyria Gas & Water Co.* v. *Elyria,* 57 Ohio St., 374; 97 O. L., 122, 126, Sections 53, 55 (Revised Statutes, 1536-213, 1536-215).

Bonds to pay the city's part of an improvement should be a part of the same issue as those to be paid from assessments on benefited property. 97 O. L., 121, 126, Sections 51, 53 (Revised Statutes, 1536-211, 1536-213); 96 O. L., 51, Section 95 (Revised Statutes, 1536-281); *Emmert* v. *Elyria,* 74 Ohio St., 185.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

Appeal from Lucas Common Pleas Court.

This action (Thomas F. Heffner, a tax-payer, on behalf of the City of Toledo, vs. the City of Toledo, Brand Whitlock, Mayor, and Randall G. Bacon, Auditor of the City of Toledo) was begun in the court of common pleas to enjoin the sale of certain bonds by the city. There a demurrer to the petition was filed and sustained; the cause was appealed to this court and has been argued and submitted to us upon this general demurrer to the petition. The case is stated in part very succinctly in the brief of counsel for the plaintiff, as follows:

"This is an action by a tax-payer against the city of Toledo and its officers for an injunction to restrain the execution and issue and sale of municipal bonds authorized by an ordinance passed August 27th, 1906. In the court below, a demurrer to the petition was sustained and the petition dismissed, whereupon the plaintiff appealed the case to this court.

"The ordinance is set out at length in the petition, and provides for the issue of seventy-five bonds of $1,000 each, payable in twenty years, with 4 per cent. interest payable semi-annually. The bonds are issued to raise money to pay the city's part of thirty-two different improvements mentioned in the ordinance; eight are for the construction of sewers, twenty-four for the construction of streets, of which nineteen are to be paved, three are to be repaved and two are to be graded. It appears from the ordinance that the city's part of the various improvements varies from the sum of $5 for sewer 985, to $26,495 for repaving Norwood avenue."

It is contended on behalf of the plaintiff that this ordinance violates one of the provisions of Section 1694 of the Revised Statutes (Bates, 1536-620) which reads: "No by-law or ordinance shall contain more than one subject, which shall be clearly expressed in its title"—the contention being that there are as many subjects here as there are improvements on account of which funds are to be raised by the sale of these bonds. In other words, thirty-two subjects; or, if that position is not tenable that since the particular improvements are designated in the statute as street improvements and sewer improvements, there are at least two subjects. We are of the opinion that there is but one subject here, and that it is the subject contemplated by Section 1536-213 (97 O. L., 126). The last clause of that section reads as follows:

"Provided, that any city or village is hereby authorized to issue and sell its bonds as other bonds are sold to pay the corporation's part of any improvement as aforesaid, and may levy taxes in addition to all other taxes authorized by law to pay such bonds and the interest thereon."

In other words, it authorizes the sale of bonds in certain cases to pay the corporation's part of certain improvements; and that seems to be what is aimed at by the city in this case, and so the ordinance in this case is entitled "An ordinance to provide for the issue of general street improvement bonds of the city of Toledo, state of Ohio, to pay said city's part of the cost and expense of improving sundry streets and alleys by paving, repaving, grading and macadamizing, and by constructing sewers therein, and

to pay the said city's part of the cost and expense of constructing such sewers." It is true that this is to provide the city's share— or a fund with which to pay the city's share—of a large part of different improvements; and by this ordinance the city declares and makes manifest an intention to make these improvements; but this ordinance does not effectively determine that these improvements shall be made; it is not an ordinance of that character; that must be done by separate legislation; and when it comes to such legislation, we have no doubt but it will be necessary to have separate legislation for each improvement. Therefore, without entering into a discussion of the cases of *Campbell* v. *Cincinnati,* 49 Ohio State, 463, and *Elyria Gas & Water Company* v. *Elyria,* 57 Ohio State, 374, 375, cited by counsel, we merely state that the cases do not seem to us to be in point or to apply to such legislation, or to such a state of affairs as we have presented here.

I wish to express my own views about this matter, and I mention that they are mine because I think perhaps they may not be endorsed by my associates, and I do not desire to seem to commit them to these views, unless they wish to have me do so. But it seems to me that there was no need at all of particularizing these improvements in this ordinance. I do not believe that the general scheme contemplated and authorized by this legislation was intended to require anything of that sort with respect to these bonds to be issued to raise the city's share of the funds necessary to carry forward these improvements. Our attention is called to Sections 2706 and 2708, Revised Statutes (Bates, 1536-285 and 1536-287), the first providing that:

"All bonds, notes or certificates of indebtedness issued by municipal corporations shall be signed by the mayor and by the auditor, comptroller, or the clerk thereof, and be sealed with the seal of the corporation; and when issued for street improvements shall have the name of the street or portion thereof so improved, and for which the same were issued, legibly written or printed upon them."

Section 2708, Revised Statutes (Bates, 1536-287) provides:

"Where the corporation is divided into districts for sewerage purposes, bonds issued for money borrowed to pay the expense

of constructing or repairing sewers in any such district, shall have the name and number of the district for which they are issued legibly written or printed upon them.''

The language seems to be broad enough to be fairly open to the construction that it was intended to cover bonds issued to raise the funds to pay the city's share of these improvements, and yet, looking into the whole scheme and purpose of this legislation, it does not seem to me that that interpretation of the statute is required, or that it is reasonable. Section 2703, Revised Statutes (Bates, 1536-284) provides that:

''All bonds issued under the authority of this chapter shall express upon their face the purpose for which they were issued and under what ordinance.''

That would apply to this case; that would apply to bonds of this character; but in my opinion the other provisions, those of Sections 2706 and 2708, Revised Statutes (Bates, 1536-285 and 1536-287) apply to bonds issued in anticipation of the funds to be raised by this special assessment, so the bond buyers may be apprised of the revenue to which they must look and the legislation upon which they must depend for the payment of those bonds, and so that the funds of the city, both those raised by taxation and those raised by assessments in different quarters of the city for different sorts of improvements, may not be improperly diverted; but that assessments collected for a certain improvement may be applied upon the bonds issued on account of that improvement, in anticipation of those assessments, and not otherwise.

But the reason for that does · not seem to me to apply at all to the cases of bonds issued for funds to pay the city's share of these improvements, since such funds are provided by general taxation upon all the property of the city, and there can, in such cases, be no such thing as taking funds from one class of persons, or from one locality, and diverting them by applying them upon improvements made in another part of the city and for other citizens or property owners. The statute has always required the city to pay the cost of intersections. It authorizes now the payment

of part of the expenses of certain improvements (street improvements and sewers) in addition to the cost of the intersections. I had never supposed that it was necessary in order to raise the funds to pay the cost of intersections, that the city should adopt legislation with respect to each one of the streets to be improved wherein intersections occurred, or if it were necessary to sell bonds for such funds, that it would be necessary to designate upon the bonds the street to be improved, on account of which the city was providing funds to pay the cost of intersections; and yet this additional cost imposed upon the city, that may be assumed by the city in addition to the intersections, stands, it seems to me, in all material respects and on principle upon the same basis as the expense of the cost of intersections.

But in this particular case it is not necessary to pass upon the question of whether the naming of the improvement upon the bonds is required, since it appears that the ordinance provides for the placing of the names of these various improvements upon the bonds, and the various improvements are designated in the ordinance.

I have already said that we hold that the ordinance contains but one subject; and it seems to us that the Legislature never intended to provide that there should be separate legislation as to the bonds to be issued to pay the city's share of each improvement, since it would lead to results quite absurd. In the case at bar, for instance, it appears that the city's share of some of these improvements does not exceed $100—in one case the city's share is but $5—and it would certainly be very absurd to require that an ordinance should be passed providing for the sale of a bond to raise that $5, since the expense of sale would far exceed the amount to be raised for the improvement. While it would be not quite as bad, it would be bad enough, if it were required in the case of improvements costing the city but one hundred or two hundred dollars.

The fund to pay the bonds is raised by general taxation—in the old statute it was spoken of as a general assessment upon all the property of the city—I think the present statute calls it a general tax, and certainly it is general as it is levied upon all the property of the city. I do not know of any distinction be-

tween a general assessment and a general tax. It is an assessment of a general tax upon all of the property of the city for certain purposes. If these funds to be raised to pay the city's share of these improvements were to be kept separate and distinct, as required in the case of the funds raised by special assessments on property specially benefited, then it would follow that for the city's share of the cost of each one of these thirty-two improvements there would be a special fund set aside to be devoted to one certain improvement and no other, and a diversion from the fund to any other improvement of like character would be wrongful and unauthorized. But for myself, I do not regard the fund raised by this general tax in that light, or as being of that character. I regard it as a general fund from which the city may draw from time to time as need shall occur to pay its share of the cost of such improvements, wherever they may be within the city.

In opposition to this view, it is urged that what is contemplated by 97 O. L., 26, Section 53, is the sale of bonds to pay the corporation's part of improvements that have been determined and have gone forward so far that special assessments have been made upon properties to be specially benefited. I read more of the section bearing upon this question, beginning about the middle of the section:

"In all municipalities the corporation shall pay such part of the cost and expense of improvements for which special assessments are levied as council may deem just, which part shall not be less than one-fiftieth of all such cost and expenses; and in addition thereto, the corporation shall pay the cost of intersections; provided, that whenever special assessments have been levied and paid for the improvement of any street or other public place, the property so assessed shall not again be assessed for more than one-half the cost and expense of repaving or repairing such street or other public place unless the grade of the same is changed."

And then follows what I have already read:

"Provided, that any city or village is hereby authorized to issue and sell its bonds as other bonds are sold to pay the corporation's part of any improvement as aforesaid, and may

levy taxes in addition to all other taxes authorized by law to pay such bonds and the interest thereon.''

It is urged that the words ''as aforesaid'' applied to what goes before means improvements on account of which assessments are, that is to say, have been levied. But we·construe this statute as meaning that such bonds may be sold to pay the corporation's part of improvements of that character, that is to say, cases where special assessments are authorized by law, where special assessments may be made—and to provide funds to pay the city's part, it is not necessary for the city to wait until the legislation with respect to the improvement has gone forward so far as that the assessments shall have been actually levied.

This is our answer to the further contention of counsel that the issuing of these bonds on account of certain of these improvements is premature and is anticipatory to a degree not authorized by the law. He points out in the petition—

''That no resolution, nor any ordinance, for the said improvement of Hawley street, or of Michigan street, or of Sherman street, has yet been passed by the council of the city of Toledo; that no ordinance determining to proceed with said improvement of Adams street, or of Fernwood avenue, or of Galena street, or of Lincoln avenue, or of West Broadway, or of Bush street, or of North 12th street, or of Norwood avenue from 22d street to Lawrence avenue, or of Robinwood avenue, or of Jarvis street, or of Parker street, has yet been passed by the council of said city. That no special assessments have been levied to pay any part of the cost or expense of any of the improvements mentioned in said ordinance passed August 27th, 1906.''

It may be said that unless the city is restricted in the sale of bonds of this character for such improvements as are going forward and such as have gone forward to a stage where assessments have been made, that it might sell bonds of this character without limit and unnecessarily raise a large fund, for which it may have no real legitimate use, unless it diverts to some other purpose.

But the council is restricted fairly by Section 53 to the raising of such revenue as may be necessary to pay its share of such

improvements as may be made or contemplated, and we are not required here to consider whether the city may not be providing for too large a fund, since there is no charge of that kind in the petition. It does not appear in the case submitted to us but what the funds for which these bonds are being issued will be needed for purposes of this character. It may be that some of these particular improvements designated may fail at some stage so that they may not be built; but it seems to us that in a case like that there is a provision of law for turning the funds over to the sinking fund—I have not that section before me—but it seems to me that it would not be an unlawful diversion of these funds (although certain improvements are designated in this ordinance) to devote them to other improvements within the corporation of like character. In other words, that what is stated in this legislation in the way of particularizing the improvements is practically surplusage. I understand, however, that in compliance with the requirements of bond buyers who are usually very cautious, sometimes overcautious, the city has adopted this method of designating the particular improvements to promote the selling of bonds of this kind; and it may be a legal necessity, though personally I can not see that it is.

Our attention has been called to a recent decision of the Supreme Court of this State, in the case of *Emmert* v. *The City of Elyria,* 74 Ohio State, 185, opinion by Judge Summers. One of the questions in that case was whether the city could go forward with a certain improvement before the money to pay the city's share of the cost of the improvement was actually in the treasury; and it was held, that since the bonds had been authorized and sold, the money should be deemed to be in the treasury; and that the contracts might be made and the improvement might go forward. It seems that in that case the city had proceeded in pursuance of 96 O. L., 51, Section 95 (Revised Statutes, 1536-281) to sell bonds that would raise a sufficient fund to pay not only the part to be met by the assessments upon the property specially benefited, but to pay the city's part of the cost of such improvement. At all events, in discussing the matter Judge Summers says that that course is authorized under

that section, and he seems to discuss it as if that were something novel in the statute; but in looking into the statutes in force before the adoption of the new code, it seems to me that there has been no material change upon this subject. I will call attention to original Sections 2263, 2265, 2273, 2274, 2703, 2704, 2705, 2706, 2708 of Bates' Annotated Ohio Revision of 1897. I shall not stop to read or comment upon all of these sections.

The statute at that time provided that part of the cost of improvements of this character might be paid by the city from the fund raised by general taxation, and until this recent utterance from the Supreme Court I had always supposed that the provisions now found in Section 1536-281 as to the issuing of bonds in anticipation of special assessments applied strictly to bonds issued in anticipation of and to be met and paid by special assessments, and not to bonds issued in anticipation of and to be paid in whole or in part from the general revenue to be raised to pay the city's share of such improvements. Since the Supreme Court has so declared it is now the law, that all of the revenue necessary, both the city's share and the share to be raised by special assessments, may be raised by the sale of bonds under and in pursuance of Section 1536-281.

But it is clear that this is not the only method of raising the city's share. If the city should proceed under that section then the bonds would run, I believe at the farthest, ten years; and if the city should proceed under that section I suppose it would follow necessarily that the improvement on account of which the funds were raised, both the city's share and the share to be made by assessment, would be named upon the bonds; all the legislation with respect to the matter would be special to the particular improvement in hand; but it is clear that 97 O. L., 126, Section 53 (Revised Statutes, 1536-213) authorizes the course of procedure pursued by the city in this case, expressly authorizes it.

We see nothing disclosed by the petition here that in our opinion would invalidate this bond issue. The demurrer will be sustained and the prayer for injunction disallowed.

*B. A. Hayes,* for plaintiff.

*John P. Manion,* for defendant.